Ken Wise, Justice
In this appeal from a take-nothing judgment in a non-jury trial on a suit to recover on a promissory note and guaranty agreement, appellant Comerica Bank contends that the trial court erred in granting an oral motion for judgment on its claims against appellees Progressive Trade Enterprises, Inc., the maker of the note, and Poul Nielsen, as guarantor, on the grounds that Comerica Bank sought to introduce a copy of the promissory note rather than the original. We affirm in part and reverse and remand in part.
BACKGROUND
For at least ten years, Poul Nielsen and Progressive Trade Enterprises, Inc. (Progressive) did business with Sterling Bank (Sterling) in connection with Progressive's business. On August 22, 2008, Nielsen, as president of Progressive, signed a promissory note with Sterling in the principal amount of $132,371.83 (the Note). No payments were ever made on the Note.
In 2011, Sterling merged with Comerica Bank (Comerica). In 2014, Comerica filed a suit alleging that Progressive failed to comply with the terms of the Note and that Nielsen failed to comply with the terms of one or more of several previously executed guaranty agreements.
A trial was held before the court on Comerica's claims in December 2016. Comerica's first witness was Mary Ellen Hensley, Comerica's vice president for special assets and the custodian of records for the loan file for Progressive and Nielsen. Hensley testified that Sterling had merged with Comerica, and that Comerica, as the surviving entity, acquired all the loans and assets of Sterling by that merger, including the Note and guaranty agreements. Hensley identified Plaintiff's Exhibit 1 as a true and correct copy of the Note.
When Comerica offered its copy of the Note into evidence, Progressive and Nielsen's counsel asked to examine Hensley on voir dire. In response to counsel's questions, Hensley testified that Comerica "came to be the holder in due course" of the Note, that the original Note was located in Comerica's collateral department in Michigan, and that she was not told to bring an original because "the copy was an exhibit that I could depended [sic] on." When asked how she could confirm that *462 the original Note had not been transferred to another bank that was actually the holder in due course, Hensley testified, "I'm verifying that they have not."
Progressive and Nielsen's counsel objected to the admission of Plaintiff's Exhibit 1. The trial court stated that it would not admit the exhibit "right now," but allowed Comerica to "lay a little bit more foundation."
Hensley proceeded to testify on direct examination that no payments were made on the Note after it was executed and that Comerica was seeking principal and interest of $99,019.58.[1] On cross-examination, Hensley was questioned about Defendant's Exhibit 15, a copy of the Note admitted into evidence at Progressive and Nielsen's request, in connection with the guaranty agreements Nielsen had executed some years earlier. After Hensley's testimony concluded, counsel for Comerica did not reoffer Plaintiff's Exhibit 1 or request a ruling on the admissibility of its exhibit.
Nielsen testified that shortly after executing the Note, he asked Sterling if it could find a "temporary solution" to his inability to make payments, which he explained was due to the then-existing financial crisis. According to Nielsen, a Sterling representative named Mr. Naudain informed him that Sterling had decided to terminate its arrangement and close the account. Nielsen stated that he never heard anything more about the loan until he was notified in 2014 that a lawsuit had been filed.[2] Nielsen confirmed that Progressive made no payments on the Note. He also confirmed his signature on Plaintiff's Exhibit 1, Comerica's copy of the Note.
After Comerica rested its case, Progressive and Nielsen moved for a "directed verdict,"[3] arguing that the original Note was not in evidence, Comerica had no explanation for failing to present it, and therefore Comerica's claim that it was a holder in due course was unreliable. Comerica's counsel responded that Comerica was not a holder in due course, but was the owner and holder of the Note through its merger with Sterling.
The trial court granted Progressive and Nielsen's motion for directed verdict "as to Plaintiff's not having reason as to why or failing to show the existence of the original and why we should rely on the copy of this document." The trial court did not expressly rule that Plaintiff's Exhibit 1 was not admitted at this time, but the record reflects that the exhibit was not admitted into evidence.
On January 4, 2017, the trial court signed a final judgment that Comerica take nothing against Progressive and Nielsen. The trial court's order did not specify the basis for its ruling. The Bank moved for a new trial, which the trial court denied by written order signed March 24, 2017.
ANALYSIS OF COMERICA'S ISSUES
On appeal, Comerica presents two issues, contending that the trial court erred in granting the motion for judgment (1) as to Comerica's claims against Progressive, *463 and (2) as to Comerica's claims against Nielsen.
Standard of Review
A motion for judgment granted at the close of the plaintiff's case in a non-jury trial may be granted based either on the legal insufficiency or the factual insufficiency of the plaintiff's evidence. Grounds v. Tolar Indep. Sch. Dist. , 856 S.W.2d 417, 422 (Tex. 1993) ; Qantel Bus. Sys., Inc. v. Custom Controls Co. , 761 S.W.2d 302, 304 (Tex. 1988). In both of its issues, Comerica argues that it "conclusively established and provided legally sufficient evidence" of its claims against Progressive and Nielsen. We therefore construe Comerica's issues as limited to challenging the legal sufficiency of the evidence.
When reviewing legal sufficiency we examine the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. See City of Keller v. Wilson , 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. Id. at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. Id.
A party attacking the legal sufficiency of an adverse finding on an issue on which he has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. Dow Chem. Co. v. Francis , 46 S.W.3d 237, 241 (Tex. 2001). The fact finder is the sole judge of witness credibility and the weight to give testimony. See City of Keller , 168 S.W.3d at 819.
When there are no findings of fact and conclusions of law, we must infer that the trial court made all findings necessary to support its judgment and we will uphold those findings if they are supported by sufficient evidence. Chenault v. Banks , 296 S.W.3d 186, 198 (Tex. App.-Houston [14th Dist.] 2009, no pet.) (citing Holt Atherton Indus., Inc. v. Heine , 835 S.W.2d 80, 83 (Tex. 1992) ). A judgment must be upheld when it can be affirmed on any legal theory that finds support in the evidence. Worford v. Stamper , 801 S.W.2d 108, 109 (Tex. 1990).
I. Comerica's Suit to Recover on the Note Against Progressive
In its first issue, Comerica contends that it conclusively proved that it was entitled to recover on the Note. To recover on a promissory note, the plaintiff must prove: (1) the note in question; (2) the party sued signed the note; (3) the plaintiff is the owner or holder of the note, and (4) a certain balance is due and owing on the note. Dorsett v. Hispanic Housing & Educ. Corp. , 389 S.W.3d 609, 613 (Tex. App.-Houston [14th Dist.] 2012, no pet.) ; Blankenship v. Robins , 899 S.W.2d 236, 238 (Tex. App.-Houston [14th Dist.] 1994, no writ).
The dispositive issue here concerns the third element: whether Comerica demonstrated that it was the legal owner and holder of the Note. A true and correct copy of a note accompanied by sworn testimony proving ownership and possession of the instrument establishes a plaintiff's status as the owner and holder of the note, absent controverting evidence. See Life Ins. Co. of Va. v. Gar-Dal, Inc. , 570 S.W.2d 378, 380 (Tex. 1978) ; McLernon v. Dynegy, Inc. , 347 S.W.3d 315, 326 (Tex. App.-Houston [14th Dist.] 2011, no pet.) (citing Zarges v. Bevan , 652 S.W.2d 368, 369 (Tex. 1983) (per curiam)); Clark v. Dedina , 658 S.W.2d 293, 296 (Tex. App.-Houston [1st Dist.] 1983, writ dism'd). Further, when one alleged to be the maker of a note does not deny the genuineness of his signature *464 on the note, he is established as the maker of the note. Blankenship , 899 S.W.2d at 238.
Comerica contends that it conclusively demonstrated that it was the owner and holder of the Note. Comerica points out that Hensley, the custodian of the Note and loan file, testified that the Note was a true and correct copy of the original of the Note, Progressive was the maker of the Note, the original of the Note was located in Comerica's collateral department in Michigan, and the Note had not been transferred to any other entity. Hensley also testified that Comerica became the owner and holder of the Note through its merger with Sterling, and the merger documentation was admitted into evidence. Further, Nielsen acknowledged that his signature was on the Note, which he signed as the president of Progressive.
As discussed above, the trial court deferred discussion on the admissibility of Plaintiff's Exhibit 1, Comerica's copy of the Note, after Progressive and Nielsen's counsel objected and argued that absent the original Note, Comerica could not establish that it was the Note's present owner or holder. On appeal, Comerica asserts that, even if Plaintiff's Exhibit 1 was not admitted, Progressive and Nielsen put their own copy of the Note into evidence as Defendants' Exhibits 13 and 15.[4] Comerica argues that these exhibits, combined with Hensley's testimony and the evidence of Comerica's merger with Sterling, conclusively establish its claim on the Note.[5] We agree that the admitted exhibits and testimony conclusively demonstrate that Comerica is the present owner and holder of the Note.
Defendants' Exhibit 13 and 15 are copies of an August 22, 2008 promissory note between Sterling and Progressive in a principal amount of $132,371.83, and signed by Nielsen on behalf of Progressive. The copies of the 2008 promissory note are identical to Plaintiff's Exhibit 1.[6] Although there was no testimony that these exhibits were true and correct copies of the Note, Progressive and Nielsen's counsel treated them as such and asked Hensley to identify them as well as other documents reflecting Progressive and Nielsen's financial dealings with Sterling over the years. Progressive and Nielsen did not question the authenticity of these documents or Plaintiff's Exhibit 1. Nielsen also acknowledged his signature on several *465 of Comerica's exhibits, including Plaintiff's Exhibit 1. Therefore, even though Plaintiff's Exhibit 1 was not in evidence, Progressive and Nielsen submitted their own, identical copies of the same Note that Nielsen admitted signing.
Additionally, Hensley affirmatively testified that Comerica acquired all the loans and assets of Sterling in the merger, including the Note. When a merger takes effect, all rights, title, and interest to all property vests in the surviving entity without further act or deed, and without any transfer or assignment having occurred. See Tex. Bus. Org. Code § 10.008(a)(2) ; Couturier v. Tex. State Bank , No. 13-03-00013-CV, 2005 WL 1982319, at *1 (Tex. App.-Corpus Christi Aug. 18, 2005, no pet.) (mem. op.) (citation and quotation omitted); see also Myers v. HCB Real Holdings, LLC , No. 05-13-00113-CV, 2015 WL 2265152, at *3 (Tex. App.-Dallas May 14, 2015, pet. denied) (mem. op.) (stating that a person not identified in a note who is seeking to enforce it as the owner or holder may prove the transfer by which he acquired the note by either testimony or documentation). Hensley also verified that Comerica was in possession of the original Note and that the Note had not been transferred to another entity. Because Comerica presented competent evidence that it was the present owner and holder of the Note, and Progressive and Nielsen presented no testimony or other evidence to the contrary, we conclude that Comerica conclusively demonstrated its status as owner and holder of the Note. See Couturier , 2008 WL 1982319, at *1-2.
Viewing the evidence in the light most favorable to Progressive, as we must, we nevertheless conclude that the trial court could not have disregarded the uncontradicted testimony and the evidence that Comerica was the owner and holder of the Note. Comerica also established the existence of the Note, that Nielsen signed the Note, that no payments were made on the Note, and the amount that was due and owing. Because Comerica conclusively proved that it was entitled to recover on the Note, we sustain Comerica's first issue.
II. Comerica's Suit to Recover on Guaranty Agreement Against Nielsen
In its second issue, Comerica contends that the trial court erred in granting the motion for judgment on Comerica's claims against Nielsen because Comerica conclusively established its claims on a guaranty agreement. To recover under a guaranty contract, a party must show proof of (1) the existence and ownership of the guaranty contract; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor. Wasserberg v. Flooring Servs. of Tex., LLC , 376 S.W.3d 202, 205 (Tex. App.-Houston [14th Dist.] 2012, no pet.). The interpretation of a guaranty is a question of law we review de novo. Id. at 206.
Comerica points out that the record contains "multiple guarantees relating to Progressive's loans from Comerica." Comerica also notes that Progressive previously obtained several loans from Sterling, and Hensley testified that the Note was a consolidation of previous loans to Progressive. Comerica claims that Nielsen is liable as a guarantor of Progressive's obligations based on three guaranty agreements. In particular, Comerica points to a guaranty agreement between Sterling and Nielsen, dated August 14, 2002 (the 2002 Guaranty), which includes the following language:
[T]he undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation *466 of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, ...[.]
Comerica asserts that two earlier guaranty agreements, executed in 1997 and 1998, "contain similar language of the guaranty of obligations of Progressive to Comerica, including future obligations." Comerica makes no other argument in support of its claim.
As Progressive and Nielsen's counsel pointed out at trial, however, the full text of the cited paragraph of the 2002 Guaranty provides:
[T]he undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s): NOTE DATED 8/14/02[.]
The 2002 Guaranty then defines "Indebtedness" as follows:
The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals, or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty ...[.]
Thus, the 2002 Guaranty provides that it does not apply to subsequent obligations entered into between Sterling and Progressive if Progressive "meets [Sterling's] standard of creditworthiness based on [Progressive's] own assets and income without the addition of a guaranty." The 2002 Guaranty also provides: "[T]his written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties."
Progressive and Nielsen introduced evidence of additional promissory notes executed each year after the 2002 Guaranty that were not accompanied by additional guaranties. Hensley also confirmed that Nielsen did not execute a guaranty in 2008 in connection with the Note.[7] Because Progressive and Nielsen presented some evidence from which the trial court could have reasonably inferred that Progressive met Sterling's standard of creditworthiness at the time the Note was executed, Comerica failed to conclusively demonstrate that it is entitled to recover on any guaranty agreement against Nielsen. We overrule Comerica's second issue.
CONCLUSION
We sustain Comerica Bank's first issue and overrule its second issue. We reverse *467 those portions of the trial court's judgment ordering that Comerica Bank take nothing by its suit against Progressive Trade Enterprises, Inc., and awarding Progressive Trade Enterprises, Inc. its costs against Comerica Bank, and we remand the case for a new trial. We affirm the remainder of the trial court's judgment.

Comerica sought to recover for missed payments and interest limited to four years before the suit was filed.

By video deposition, Naudain denied that he would have told Nielsen that his loan would have been terminated or forgiven.

Although Progressive and Nielsen's counsel referred to their motion as a request for a "directed verdict," the appropriate term in a case tried to the bench is a "motion for judgment." See Schwartz v. Pinnacle Commc'ns , 944 S.W.2d 427, 431 n.1 (Tex. App.-Houston [14th Dist.] 1997, no writ) (citing Qantel Bus. Sys. v. Custom Controls , 761 S.W.2d 302, 303 (Tex. 1988) ).

Although Comerica refers to Exhibit 13, it is probably referring to Exhibit 14, which is a copy of the 2008 promissory note that is missing an exhibit sticker, making it appear as though the document is part of Exhibit 13. To avoid confusion, we will continue to refer to the document as Exhibit 13.

In the alternative, Comerica contends that the trial court abused its discretion in excluding Plaintiff's Exhibit 1. But after the trial court deferred ruling on Plaintiff's Exhibit 1, Comerica did not reoffer the exhibit and request a ruling at any time before resting its case. Therefore, Comerica failed to properly preserve this issue for our review. See Tex. R. App. P. 33.1(a) ; Hahn v. Love , 394 S.W.3d 14, 36 (Tex. App.-Houston [1st Dist.] 2012, pet. denied) (holding that appellant waived complaint that court erred in excluding exhibits when court deferred discussion on admissibility and appellant never attempted to introduce exhibits again and never presented any argument to the trial court regarding why they were admissible). Nor did Comerica make an offer of proof at the conclusion of the trial, even though it did so for a different exhibit. See Tex. R. Evid. 103(a)(2) ; Carlile v. RLS Legal Solutions, Inc. , 138 S.W.3d 403, 411 (Tex. App.-Houston [14th Dist.] 2004, no pet.). We therefore do not consider Comerica's evidentiary arguments regarding Plaintiff's Exhibit 1.

Although the record indicates that Plaintiff's Exhibit 1 was not admitted into evidence and Comerica made no offer of proof at the end of trial, the record includes Plaintiff's Exhibit 1.

Comerica also attempted to demonstrate that Nielsen was a guarantor of the Note through Hensley's testimony concerning a "Business Express Loan Application" Nielsen made in connection with Note. However, Nielsen's obligations as a guarantor are determined by the written terms of the guaranty agreement alone. See Vastine v. Bank of Dallas , 808 S.W.2d 463, 464 (Tex. 1991) (per curiam). In any event, although the loan application identified Nielsen as Progressive's "President" and "Principal," nowhere in the document is Nielsen identified as a guarantor of the Note.